WILLIAM W. WILLARD, RESPONDENT, *v.* THE DORAN & WRIGHT COMPANY (LIMITED), APPELLANT.

*Action to recover bets lost and paid — it is not referrible.*

This action was brought to recover the sum of $8,820 paid by the plaintiff, in settlement of wagers and bets lost by the plaintiff and won by the defendant, it being alleged that said bets and wagers were unlawful under the laws of the State of New York governing the subject of betting and gaming, and that, under said laws, the defendant was liable to the plaintiff for the sum paid to the defendant on said bets.

*Held,* that the action was not on contract and was not referrible.

APPEAL from an order, made at the Rensselaer Special Term, referring the action to a referee to hear and determine.

The action was brought to recover the sum of $8,820 paid by the plaintiff to the defendant, in settlement of wagers and bets lost by the plaintiff and won by the defendant, it being alleged that said bets and wagers were unlawful under the laws of the State of New York governing the subject of betting and gaming, and that, under

the said laws, the defendant was liable to the plaintiff for the sums paid to the defendant on said bets.

*Edwin Countryman,* for the appellant.

*G. B. Wellington,* for the respondent.

LEARNED, P. J.:

The opinion of the learned justice who granted the order of reference shows that the principal ground taken by the defendants before him was that the action was one for penalties or forfeiture.

On this appeal, however, the defendants urge rather that the action is not on contract, and therefore that it cannot be referred. (*Townsend* v. *Hendricks,* 40 How., 143.) The learned justice, following the language of *McDougall* v. *Walling* (48 Barb., 364), speaks of defendant's liability as on "an implied contract." There has been some inaccuracy in the use of this phrase. If it is applied only to cases in which parties enter into a real contract, but without express words, then it is accurately used. If A borrows money of B, he really agrees to pay it, although he does not expressly say so. But in a case like the present, there is no contract to repay the money, either express or implied; and to call the liability an "implied contract" gives an incorrect idea of the nature of the liability. Such use of this phrase probably arose under the old forms of pleading when the action of assumpsit was found so useful. It was necessary in that action to allege a promise, while the action often lay in cases where no promise had been made. The civil law writers found the difficulty of attempting to classify actions into those *ex contractu* and those *ex delicto.* Therefore they made two other classes, viz., *quasi ex contractu* and *quasi ex delicto.* Thus they said that the action to recover back money paid by mistake was *quasi ex contractu,* for the party was so far from being bound by a contract, that he was bound rather *ex distractu* than *ex contractu,* because money paid was rather to dissolve than to form a contract. (Inst., III, 27, 6.) Similarly in this case the defendant made no contract to pay the plaintiff the money demanded. The actual contract between the parties, even if valid, would not be that which the plaintiff seeks to enforce. He claims that the defendant has money of his which, in justice and good conscience, the defendant should return.

This right of action is not unlike the action to recover money paid by mistake. In each the money is paid voluntarily, in each it is unjust for the defendant to retain that which he has received, in neither has he agreed to return it. We might then class this as an action *quasi ex contractu*, for there is no agreement to return the money, which would give an action *ex contractu*. And on the other hand, possession of the money was not obtained by force or fraud, and thus the action is not strictly *ex delicto*.

It may be said that as the betting was unlawful and the contract of betting void, therefore the receipt of money by defendant from plaintiff was tortious. (*Betts* v. *Hillman*, 15 Abb., 184.) Yet it may be a forced use of that word to say that payment voluntarily made without deceit or fraud or misrepresentation was obtained tortiously. It seems hardly necessary to take that view.

If this is not an action *ex contractu*, it cannot be referred. And to determine whether it is such an action, we must look at the facts and not at any forms of pleading. We are not to imply a contract where there is none in order to refer the case. It might be said, with equal propriety, that when one has committed an assault and battery on another, the law raises an implied promise that he shall compensate the injured party. It is useless and mischievous to argue on implied contracts which the parties never made or thought of. *Meech* v. *Stoner* (19 N. Y., 26), only decided that such a cause of action is assignable. *Betts* v. *Hillman* (*ut supra*) held that in such an action, a recovery could be had against one of two partners and that the defendants were tort feasors. *McDougall* v. *Walling* (*ut supra*) held that one of such causes of action might be set up as a counter-claim against a similar cause; that it was a demand arising on contract. But we are unwilling to follow that decision. Suppose that the plaintiff had lost money and the defendant had found it. An action to recover it would lie. But could it be said that there was an implied promise to pay; and hence the action was on contract and might be referred? There is but one form of civil action. (Code, 3339.) Hence we must look at facts, not at fictions, to determine whether a cause of action is on contract. Looking at the facts, we see that the plaintiff paid defendant money on unlawful contracts, and by statute he is allowed to recover it back. Unless we adopt the fiction that defendant promised to repay it, the action

is not on contract. If we may use fictions enough, every action may be shown to be on contract. Certainly the plaintiff does not sue on the betting contracts. They are void; and, if valid, he would not have any claim on them. On what contract, then, does he sue? He recovers, if at all, in opposition to the only contracts he made or attempted to make. He recovers because the defendant has in his possession money of the plaintiff and has no title thereto.

The order should be reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs. The order to express that it is made on the ground that the action is not referrible.

All concurred.

INGALLS, J.:

We feel constrained to differ with the learned justice at Special Term in the conclusion which he reached, in regard to the authority of the court to direct a compulsory reference in this action. The Code of Civil Procedure, section 1013, provides: "The court may, of its own motion or upon the application of either party, without the consent of the other, direct a trial of the issues of fact by a referee, when the trial will require the examination of a long account on either side, and will not require the decision of difficult questions of law."·

In *Townsend* v. *Hendricks* (40 How., 143), decided by the Court of Appeals, the court held that to justify a compulsory reference to hear and determine, that the cause of action must arise upon contract and involve the examination of a long account. That decision has been adhered to since it was rendered as controlling authority upon that subject. (*Kain* v. *Delano*, 11 Abb. Rep. [N. S.], 29.) In that case Judge ALLEN remarks: "The Constitution secures to parties a trial by jury in certain cases, and neither the court nor the legislature can deprive them of that right (Const., art. 1, § 2; *Townsend* v. *Hendrickson*, recently decided by this court); and no action can be referred for trial without the consent of the parties, except as authorized by statute." The character of the action must be determined by the complaint alone. (*Untermyer* v. *Beinhauer*, 105 N. Y., 521.) The plaintiff will be compelled to establish, by evidence, the facts alleged in his complaint in order to recover, as

the defendant has interposed an answer denying each and every allegation of the complaint in regard to the cause of action. The complaint and answer herein are as follows:

## SUPREME COURT — RENSSELAER COUNTY.

WILLIAM W. WILLARD, RESPONDENT,
*against*
THE DORAN & WRIGHT COMPANY
(LIMITED), APPELLANT.

The complaint shows, upon information and belief: First. That the defendant is a corporation of the class known as "limited liability companies," organized and existing under the laws of the State of New York; that the defendant's corporate title is the "Doran & Wright Co., Limited;" that it, during the time hereinafter mentioned, has conducted business at Troy, Rensselaer county, State of New York. Second. That heretofore, to wit, from the 1st day of June, 1885, to the 1st day of July, 1887, the plaintiff made bets and wagers with the defendant on the future prices of shares of the railroad corporations and other corporations, which said shares are dealt in at the Stock Exchange, in New York city, and are there quoted daily. That said wagers were to be determined by the prices that should obtain for said shares at said exchange after said bets were made. That said plaintiff also made bets and wagers with the defendant within said time on the prices that should obtain at the sales in the open market of what is known as "oil certificates." Third. That the said prices for said shares and for said oil certificates were each day telegraphed from the principal office of the defendant to its branch office at Troy, N. Y. Fourth. That said bets were made under the guise of purchases and sales of said shares and said oil certificates. That in no case were there any of the shares of said stock pretended to be bought or sold delivered; and in no case was there any delivery of the said oil certificates pretended to be bought or sold; but in each and every case the pretended transaction was fictitious, and the pretended purchase or sale was settled between the plaintiff and the defendant according to the difference in the price of the shares or oil certificates at the time of the pretended purchase or sale, and the price of the same at the pretended

sale or purchase of the same to close out the pretended transaction. That it was the intention of the plaintiff and the defendant that the pretended transactions should not be real, but that all transactions between the plaintiff and the defendant should be settled according to the fluctuations of the prices of said shares and oil certificates without in any case the delivery of the thing pretended to be bought or sold. Fifth. That said prices fluctuated from day to day, and that when said bets were made (or purchase or sale of stocks, or oil as was the guise of said bets) the prices which should determine said bets and wagers were not known, but were chances unknown and contingent events, and depended upon unknown and contingent events. Sixth. That all of said bets and wagers have before the commencement of this action been fully determined. Seventh. That in all said bets and wagers the plaintiff lost and the defendant won large sums of money, which, in the aggregate, amount to $8,820. That said bets and wagers were unlawful under the laws of the State of New York governing the subject of betting and gaming. And under said laws the defendant is liable to the plaintiff for the sums paid to the defendant on said bets. Eighth. That the plaintiff has before the commencement of this action paid to the defendant, upon the event of said wagers and bets, the said sum lost by the plaintiff and won by the defendant, to wit, the sum of $8,820,

Wherefore, the plaintiff demands judgment against the defendant for the sum of $8,820, with interest from the commencement of this action, besides costs.

SMITH & WELLINGTON,

*Plaintiff's Attorneys.*

*Office and post-office address,* 16 *First street, Troy, N. Y.*

[VERIFICATION.]

SUPREME COURT — RENSSELAER COUNTY.

WILLIAM W. WILLARD
*against*
DORAN & WRIGHT COMPANY, LIMITED.

The defendant above-named appearing herein by J. Dana Jones, its attorney, and answering the complaint of the above-named plaintiff:

*First.* Admits that it is a corporation of the class known as "limited liability companies," organized and existing under the laws

of the State of New York, but alleges that its corporate title is " Doran & Wright Company, Limited," and not " The Doran & Wright Company, Limited."

*Second.* Further answering the said complaint, the defendant denies each and every other allegation in the said complaint contained. Wherefore, the defendant demands a dismissal of the said complaint, with the costs of this action.

J. DANA JONES,

*Defendant's Attorney.*

*Office and post-office address,* 49 *Broadway, New York City.*

[VERIFICATION.]

The plaintiff, by his complaint herein, fails to state a cause of action upon contract, or to allege a long account between the parties in the sense contemplated by said section 1013 of the Code, in order to justify a compulsory reference. (*Camp* v. *Ingersoll,* 86 N. Y., 433.) In that case Judge FOLGER remarks : " An account between the parties is one made up of the dealings of the parties with one another." In *Silmser* v. *Redfield* (19 Wend., 21), NELSON, Ch. J., says : " The statute authorizing the court to refer causes applies only to cases where accounts, in the common acceptation of that term, may exist and may require examination." (*Dederick's Admrs.* v. *Ridley,* 19 Wend., 108 ; *Van Rensselaer* v. *Jewett,* 6 Hill, 373.) The plaintiff's cause of action, gathered from the complaint, may be stated briefly as follows : That the parties engaged in a gambling enterprise, in violation of law, and the defendant won the plaintiff's money, and the latter seeks in this action to recover it back. It is very clear that when the parties entered upon such scheme there was no agreement, express or implied, to the effect that the party who won the money should return to the party who was unsuccessful, the amount which he had lost. The plaintiff voluntarily parted with his money, and now seeks to recover the same, not by virtue of any contract, but by force of a statute which authorizes an action for that purpose. The allegations of the complaint cannot, we think, be successfully distorted into the statement of a cause of action upon contract, or the allegation of a long account between the parties, as the same is contemplated by the provision of the Code referred to, and as the same has been defined by the courts in the decisions.

·(*Goodfellow* v. *Wolcott*, 12 N. Y. State Rep., 620 ; *Untermyer* v. *Beinhauer*, *supra*.) In the last case Judge RAPALLO remarks : " It has repeatedly been held that where there is no account between the parties in the ordinary acceptation of the term, the cause cannot be referred, although there may be many items of damage." (See, also, *Keep* v. *Keep*, 58 How., 139.) To justify such a reference the account must also spring directly from the cause of action, and not arise collaterally or incidentally.

The order must be reversed, with costs to be paid by the plaintiff.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.